UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN LEWYCKYJ,

                              Plaintiff,

v.                                                        3:13-CV-00126
                                                         (MAD/TWD)
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

STANLEY LAW OFFICES                   JAYA C. SHURTLIFF, ESQ.
*Counsel for Plaintiff*
215 Burnet Avenue
Syracuse, New York 13203

HON. RICHARD S. HARTUNIAN             MONIKA K. CRAWFORD, ESQ.
United States Attorney for the        Special Assistant United States Attorney
Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL
Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, I recommended that the Commissioner of Social Security's determination be affirmed and the Complaint be dismissed.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was fifty years old at the time of the hearing. (Administrative Transcript ("T") at 27.[1]) He has approximately three years of college education, but no degree. *Id.* at 27-28. He passed the Series 7 Brokerage exam in 2001 or 2002 to obtain a stock broker's license. *Id.* at 28. However, Plaintiff never obtained a job as a broker. *Id.* at 37. He was employed as an art model at the Rhode Island School of Design for two years. *Id.* at 29. Previous to that employment, Plaintiff was a reporter on the floor of the New York Stock Exchange for a "few years." *Id.* at 30. He alleges disability due to Bipolar Disorder. *Id.* at 31.

Plaintiff applied for disability insurance benefits and SSI on January 7, 2010. *Id.* at 78-81. The application was denied on April 7, 2010. *Id.* at 39-40. He requested a hearing before an Administrative Law Judge ("ALJ") on April 13, 2010. *Id.* at 45-46. The hearing was held on May 12, 2011. *Id.* at 24-38. On July 26, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. *Id.* at 6-23. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied his request for review on December 7, 2012. *Id.* at 1-4. Plaintiff commenced this action on February 1, 2013. (Dkt. No. 1.)

---

[1]     Page numbers in citations to the Administrative Transcript (Dkt. Nos. 9-1 - 9-7) refer to the page numbers in the original document.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2012)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step

two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since January 7, 2010; (2) he suffers from the severe impairment of Bipolar Disorder (variously characterized); (3) his severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix1; (4) he has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, and is able to (on a

sustained basis) understand, carry out, and remember simple instructions and directions, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting; (5) he is capable of performing past relevant work as an art model, as this work does not require performance of work-related activities precluded by Plaintiff's RFC; and therefore, (6) that Plaintiff is not disabled.  (T. at 11-19.)

IV.     **THE PARTIES' CONTENTIONS**

Plaintiff claims that the ALJ erred by: (1) upholding the RFC assessment for Plaintiff that is unsupported by substantial evidence; (2) finding non-disability based on Plaintiff's previous work as an art model, also allegedly unsupported by evidence, and (3) not developing the record in regard to physical impairments and limitations.  (Dkt. No. 11.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 12.)

V.      **DISCUSSION**

A.      **The ALJ's Rejection of Plaintiff's Treating Physician's Opinion was Conducted Under the Correct Legal Standard and Supported by Substantial Evidence.**

Plaintiff's first claim is two-fold: first, he argues that the ALJ erred by placing significant weight on the opinion of the "one-time consultative examiner and non-examining state agency review physician" while affording "very little weight" to the opinion of Plaintiff's treating physician, Dr. Tinio.  (Dkt. No. 11 at 7-10.[2])  Second, Plaintiff argues that this resulted in the ALJ's finding of the RFC unsupported by substantial evidence.  *Id.* at 10-11.

_____

[2]     Page numbers in citations to Plaintiff's brief refer to page numbers in the original document.

Defendant argues that the ALJ did not err by taking into consideration the opinions of the state agency psychological consultant Dr. Inman-Dundon and the "well-supported opinion" of the consultant examiner, Dr. Long. (Dkt. No. 12 at 11-13.[3]) Defendant further argues that the ALJ properly gave little weight to the opinion of Plaintiff's treating physician Dr. Tinio because, as the ALJ noted, Dr. Tinio's medical source statement was not supported by his treatment records for Plaintiff. *Id.* at 14-15. Finally, Defendant argues that the ALJ's finding of a RFC of "able to perform a full range of work at all exertional levels" was supported by substantial evidence in the medical record. *Id.* at 10-16.

With regard to the weight the ALJ gave to the treating physician's opinion, I find no error for the reasons that follow. Plaintiff was admitted to Silver Hill Hospital on November 24, 2009, and diagnosed with alcohol-induced mood disorder and depressive disorder. (T. at 11-12, 216-245.) At Silver Hill, Plaintiff was under the care of Dr. Irwin Gelman, M.D. *Id.* Plaintiff presented symptoms consistent with Bipolar Disorder including "energetic periods alternating with depressive periods" and "euphoric or mixed episodes accompanied by inability to sleep, anxious rumination, racing thoughts, listlessness, [and] poor judgment." *Id.* at 221. Dr. Gelman prescribed Plaintiff Lithium[4] to treat Plaintiff's symptoms. *Id.* Within two days, Dr. Gelman noted that Plaintiff reported that "he feels his thinking is less scattered, his thoughts are clearer,

---

[3]     Page numbers in citations to Defendant's brief refer to page numbers in the original document.

[4]     Lithium Carbonate is the generic name for Eskalith, and is used for the treatment of manic episodes associated with Bipolar Disorder. *The PDR Pocket Guide to Prescription Drugs*, 526-527 (Bette LaGow ed., 7th ed. 2005); PDR.NET, http://www.pdr.net/drug-summary/lithium-carbonate-tablets-and-capsules?drugla belid=2719 (last visited Mar. 5, 2014).

he is feeling less anxious and more at peace . . . mood is improving overall." *Id*. at 12, 222 (internal quotations omitted). On December 2, 2009, Dr. Gelman noted that Plaintiff "maintained excellent behavioral controls, denied suicidal ideation, depression, psychotic features, or manic symptoms such as racing thoughts, problems sleeping, grandiose or delusional ideation . . . [h]e has been socially appropriate, feeling normal, and again spoke of how grateful he is for the treatment he has received here." *Id*. at 12, 223. Dr. Gelman discharged Plaintiff to aftercare treatment at Addition Center of Broome County, Inc. ("ACBC"). *Id.*

Dr. Florante Tinio, M.D., the medical director at the ACBC, first evaluated Plaintiff on December 18, 2009. *Id*. at 12, 246-247. Dr. Tinio initially noted that Plaintiff was "neat and tidy in his appearance . . . cooperative and pleasant and interacted well during interview" and that his speech was "continuous, relevant, coherent and logical." *Id*. at 247. Discussing Plaintiff's recent prescription of Lithium after being diagnosed as Bipolar, Dr. Tinio noted that Plaintiff "reported today that since starting this medication his mind is much clearer . . . his mood is also more stable." *Id*. at 12, 246. In reviewing Plaintiff's employment background, Dr. Tinio reported "he has had good employment . . . he had been licensed as a stockbroker and he had been on the floor on Wall Street." *Id.* Dr. Tinio further noted Plaintiff's "memories of recent and past events were intact" with "no delusion, hallucination, or illusion," and he was "not expressing suicidal or homicidal ideation." *Id*. at 14, 16, 247. Dr. Tinio further noted: "he is of average intelligence . . . he has some insight with good judgment." *Id*. at 16, 247. Dr. Tinio diagnosed Plaintiff with "Alcohol dependence; Cannabis abuse; Opioid dependence; Cocaine dependence but in full sustained remission; Bipolar disorder manic," and referred him to continued care at ACBC and advised him to continue to take Lithium. *Id*. at 247.

In his medical source statement, dated April 20, 2010, Dr. Tinio diagnosed Plaintiff as

Bipolar and Manic with substance dependence in full remission. *Id*. at 296. On the form, where

instructed to identify the patient's signs and symptoms, Dr. Tinio checked the following boxes:

Anhedonia or pervasive loss of interest in almost all activities; mood disturbance; recurrent

obsession or compulsions which are a source of marked distress; impulsive and damaging

behavior; hyperactivity; impairment in impulse control; emotional lability; deeply ingrained,

maladaptive patterns of behavior; persistent disturbances of mood of affect; and sleep

disturbance. *Id.* Dr. Tinio also evaluated Plaintiff's ability to perform work-related functions

based on his mental impairment. Dr. Tinio categorized Plaintiff as "unable to meet competitive

standards"[5] for all but three categories, which he categorized as "seriously limited but not

precluded"[6] from working. *Id*. at 297. Notably, Dr. Tinio did not find Plaintiff completely

unable to function, as none of the categories on the medical source statement were checked "no

useful ability to function."[7] *Id.*

In the category of "mental abilities and aptitude needed to do particular types of jobs," Dr.

Tinio checked "seriously limited, but not precluded" in the areas of interacting appropriately with

the general public; adhering to basic standards of neatness and cleanliness; traveling in unfamiliar

---

[5]     Unable to meet competitive standards is defined as "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." *Id.* at 297.

[6]     Seriously limited but not precluded is defined as the "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." *Id.*

[7]     No useful ability to function is defined as "an extreme limitation . . . your patient cannot perform this activity in a regular work setting." *Id.*

9

places; and use of public transportation. *Id*. at 298. Dr. Tinio checked "unable to meet competitive standards" for the area of maintaining socially appropriate behavior. *Id*. On the source statement section requiring the physician to opine if the "applicant could still be disabled is he/she stopped using drugs or alcohol," Dr. Tinio answered: "He is not using [in] remission, but still have symptoms of Bipolar." *Id*.

Plaintiff underwent a consultive psychiatric evaluation with Sara Long, Ph.D, at the request of the Administration, on March 29, 2010. *Id*. at 13, 269-272. Dr. Long noted Plaintiff "was neat and well groomed. Gait, posture, and motor behavior were normal. Eye contact was appropriate." *Id*. at 270. His speech was "fluent and clear with adequate receptive and expressive language." *Id.* "He was coherent and goal directed" with "no indication of any sensory of thought disorder." *Id.* He also "displayed a full range of appropriate affect in speech and thought content." *Id.* She described his mood as "euthymic."[8] *Id.* She also noted Plaintiff "is taking care of his own grooming . . . he is doing cooking, cleaning, laundry, and shopping . . . no problems are reported in these areas." *Id.* at 271. As far as cognitive functioning, Dr. Long noted: "Mr. Lewyckyj appears to be functioning on an average intellectual level with a good fund of information." *Id.*

In her medical source statement, Dr. Long stated that Plaintiff:

> was able to follow and understand simple directions and
> instructions and to perform simple tasks independently. He was
> able to maintain attention and concentration and is able to maintain

---

[8] Euthymic is defined as "pertaining to a normal mood in which the range of emotions is neither depressed nor highly elevated." Euthymic, The Free Dictionary by Farlex, available at: http://medical-dictionary.thefreedictionary.com/euthymic

> a regular schedule. He appears able to learn new tasks, perform
> complex tasks independently, make appropriate decisions, relate
> adequately with others, and to have adequate stress management
> skills.

*Id.* Dr. Long concluded that the results of her evaluation of Plaintiff were "consistent with substance abuse problems which may interfere with his ability to function on a regular basis." *Id.* She diagnosed Plaintiff with poly-substance abuse of cocaine and heroin in remission, and alcohol and cannabis in early remission. *Id.* at 272.

Shortly thereafter, a psychological consultant for the Administration, Dr. Inman-Dundon, reviewed Plaintiff's medical records. *Id.* at 13, 273-290. She concluded Plaintiff has only mild restrictions on his daily activities, mild restrictions on maintaining social functioning, and moderate restrictions on maintaining concentration, persistence or pace. *Id.* at 283. Dr. Inman-Dundon stated "the claimant's allegations are credible but not to the degree alleged." *Id*. at 289. Dr. Inman-Dundon adopted the opinion of Dr. Long and further noted "vocationally, the claimant can perform unskilled to semi-skilled work." *Id.* at 16, 289.

After successfully completing the aftercare program at the ACBC, Plaintiff was discharged on July 22, 2010. *Id.* at 12, 299-326.

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions are inconsistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2); *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is

with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved for the Commissioner. *Snell,* 177 F.3d at 133.

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran*, 362 F.3d at 32 (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.; see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6) (2012). This includes a requirement that the ALJ attempt to fill any clear gaps in the administrative record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Filling a gap in the record may include requesting that the treating physician supplement his findings with additional information. *Id.* at 80 (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). A treating physician may be able to provide a sufficient explanation for "any seeming lack of support for his ultimate diagnosis of complete disability." *Id.* This is because the physician may not have included supporting information in the report because he did not know that the ALJ would consider it critical to the case. *Id.* Failure to conduct this analysis is considered failure to

apply the correct legal standard and is a ground for reversal. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Here, the ALJ gave little weight to Dr. Tinio's medical source statement, despite him being the treating physician, because his statement was inconsistent with his own written notes and record regarding Plaintiff. (T. at 16-18.) "The Undersigned gives very little weight to Dr. Tinio's source statement because there is absolutely nothing in his treatment records to support such severe limitations. Throughout those records the claimant consistently reported that his symptoms were stable with medication compliance. There is no evidence to support his testimony regarding concentration problems." *Id.* at 17-18 (internal citations omitted). Furthermore, as the ALJ noted, Dr. Tinio's source statement was inconsistent with the opinions of the other treating specialists and the overall medical record. *Id.* at 16-18.

The ALJ gave significant weight to Dr. Inman-Dundon's and Dr. Long's reports. The ALJ noted that Dr. Inman-Dundon's report and opinion carried such weight because of her "programmatic expertise" and "her conclusions are entirely consistent with the longitudinal medical evidence in the record." *Id.* at 17. The ALJ noted that Dr. Long's consultative report carried such weight because of her "programmatic expertise" and because "her report was based on an examination of the claimant." *Id.*

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2) (2012). This is necessary to assist the Court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell,* 177 F.3d at 134.) Failure to provide "good reasons" for not crediting the opinion of a

claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

Here, the ALJ has provided "good reasons" for discrediting Dr. Tinio's source opinion, as discussed above, when she cited that Dr. Tinio's source statement was inconsistent with his own medical notes and records for Plaintiff, and that the source statement was inconsistent with the other reviewing doctors' findings. (T. at 16-18.) However, even if Plaintiff were to show that the ALJ did not provide "good reasons" for disregarding Dr. Tinio's opinion, the ALJ applied the correct legal standard through the two-step process to determine Plaintiff's RFC. Even taking into consideration Dr. Tinio's opinion, his single source statement would not outweigh his medical reports and the opinions of the other medical sources. The ALJ's overall conclusion was based on the entire medical record and therefore based upon substantial evidence.

Plaintiff further argues that the ALJ's failure to inquire into the differences in Dr. Tinio's notes and reports and his source statement rises to the level of failure to develop the record. The Second Circuit has acknowledged, "a treating physician's 'failure to include . . . support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.'" *Rosa*, 168 F.3d at 80 (quoting *Clark*, 143 F.3d at 118). A scant record reveals a host of lost opportunities for the ALJ to develop the facts of the case before rejecting a finding of disability. *Rosa*, 168 F.3d at 80 (finding that by forgoing opportunities to develop the record and rejecting the treating physician's medical assessment, the ALJ committed legal error). An ALJ should not base his or her conclusions on incomplete information that is

conclusive of very little. *Id.* However, this only applies when there is an obvious gap in the record; "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* at 72 n.5 (citing *Perez*, 77 F.3d at 47). Here, Dr. Tinio's conflict between his disability opinion and his treatment notes does not indicate an obvious gap in the record, only an inconsistency. Further, his treatment notes are consistent with the notes of the other medical sources. (T. at 16-18.) Therefore, the ALJ was under no obligation to investigate further before rejecting Dr. Tinio's opinion. As such, I find the ALJ's rejection of Plaintiff's treating physician's opinion was conducted under the correct legal standard and supported by substantial evidence.

**B.     The ALJ's Residual Functional Capacity Assessment for Plaintiff was Conducted Under the Correct Legal Standard and Supported by Substantial Evidence.**

Plaintiff argues that the ALJ's RFC finding of "able to perform a full range of work at all exertional levels" is unsupported by substantial evidence. (Dkt. No. 11 at 6-11.) Defendant argues that the ALJ's RFC is supported by substantial evidence in the medical record. (Dkt. No. 12 at 10-13.) For the reasons that follow, I find that the ALJ's determination that Plaintiff is "able to perform a full range of work at all exertional levels" was conducted under the correct legal standard and supported by substantial evidence.

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2012). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that

basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 42 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. § 404.1546(c) (2012). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. 20 C.F.R. § 404.1545(a) (2012). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1569a(b) (2013).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2010).[9] Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999). Here, the ALJ evaluated the medical record, weighed it against Plaintiff's testimony, and concluded "[u]ltimately, the clinical findings and objective medical evidence in the record do not support the claimant's

---

[9] Here, Plaintiff failed to present an argument that the ALJ did not place substantial weight on his complaints of pain, but because the ALJ addressed this assessment in the decision, it is applicable here.

allegations of significant mental functional limitations in the absences of drug and alcohol abuse." (T. at 15-16.)

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work related abilities on a function-by-function basis. 20 C.F.R. §§ 404.1545, 416.945 (2012). Each finding must be considered separately and the ALJ should specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (citations omitted). Each assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. RFC may then be expressed in terms of the exertional levels (sedentary, light, etc.) to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Here, in evaluating Plaintiff's claims, the ALJ concluded that "Plaintiff has the residual capacity to perform a full range of work at all exertional levels. Additionally, the claimant is able to (on a sustained basis) understand, carry out, and remember simple instructions and directions, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting." (T. at 14.) The ALJ came to this conclusion by evaluating the records of Dr. Tinio, Dr. Long, and Dr. Inman-Dundon in a two-step process to determine first, if Plaintiff's symptoms can be attributed to a mental impairment and then second (if such mental impairment is supported by the medical record), the intensity, persistence and limiting

effects of the impairment on Plaintiff. *Id.* at 15-18. The ALJ concluded that Bipolar Disorder was established by the medical evidence. *Id.* at 11. However, in evaluating the limitations of the mental impairment, based on the records of all three doctors, the ALJ concluded that "[u]ltimately, the clinical findings and objective medical evidence in the record do not support the claimant's allegations of significant mental functional limitations in the absence of drug and alcohol abuse." *Id.* at 15-16.

The ALJ came to this conclusion by weighing Plaintiff's testimony against the medical records of all three doctors. *Id.* at 14-18. The ALJ noted although Plaintiff claimed he experiences "episodes of manic depression" and "memory loss and paranoia" (*id.* at 15, 140), Dr. Tinio noted that the Lithium had positive effect and that "[Plaintiff] reported today that since starting this medication his mind is much clearer...his mood is also more stable." *Id.* at 12, 246. Further, the ALJ noted that Dr. Tinio reported that Plaintiff's mental stability was improved and that "[Plaintiff's] memories of recent and past events are intact" with "no delusion, hallucination, or illusion." *Id.* Despite Plaintiff's claims that he has been unable to focus in regard to his education, Dr. Tinio even noted Plaintiff's mental capacity was sufficient and that "he is of average intelligence . . . he has some insight with good judgment." *Id.* at 16, 246.

The ALJ noted that despite Plaintiff's claims that he is dependent on his mother, Dr. Long noted in her report that Plaintiff "is taking care of his own grooming . . . he is doing cooking, cleaning, laundry, and shopping . . . no problems are reported in these areas." *Id.* at 13, 15, 271. She further noted he has "adequate social skills" and was "generally cooperative, but evasive on the substance issues." *Id.* at 16.

In evaluating Dr. Inman-Dundon's records, the ALJ noted that Dr. Inman-Dundon

concluded Plaintiff has only mild restrictions on his daily activities. *Id.* at 16-17, 283. Dr. Inman-Dundon further noted "vocationally, the claimant can perform unskilled to semi-skilled work." *Id*. at 17, 289. The records of the three doctors and Plaintiff's testimony are accepted as substantial evidence under 20 C.F.R. § 404.1546 (2012). These findings set forth by the physician's concerning Plaintiff's ability clearly support the RFC. Therefore, I find the ALJ's determination of Plaintiffs's RFC supported by substantial evidence and conducted under the correct legal standard.

### C.     The ALJ's Finding of Non-disability Based Upon Past Work as an Art Model was Conducted Under the Correct Legal Standard and Supported by Substantial Evidence.

Plaintiff argues that the ALJ erred by finding non-disability based upon Plaintiff's past work as an art model. (Dkt. No. 11 at 11-13.) Defendant argues that the ALJ did not err in this finding because the ALJ properly found that Plaintiff could perform his past relevant work as an art model based on his RFC assessment and the physical and mental demands of the job. (Dkt. No. 12 at 17-18.) For the reasons that follow, the ALJ's finding of non-disability at the fourth step of the five-step sequential evaluation process under 20 C.F.R. § 416.920(a) was conducted under the correct legal standard and is supported by substantial evidence.

To satisfy the statutory definition of disability, the claimant must be unable to do his or her previous work, but also unable to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B) (2012). At step four of the five-step process the ALJ asks whether the claimant can perform former relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). "[E]ven if the claimant cannot work the equivalent of 8 hours a day, for 5 days a week, '[p]art-time work that was substantial gainful activity, performed within

the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.'" *Melville*, 198 F.3d at 52 (internal citations omitted).

Past relevant work, especially part-time work, is not relevant unless it was substantial gainful activity. *Id*. at 53-54. "[P]roper assessment of whether past work was substantial gainful activity requires evaluation of, *inter alia*, how well the claimant performed her duties, whether those duties were minimal and made little or no demand on her, what her work was worth to the employer, and whether her income was tied to her productivity." *Id*. at 54.

Here, after determining Plaintiff's RFC (discussed above), the ALJ evaluated Plaintiff's past relevant work. (T. at 18.) The ALJ found that because Plaintiff was employed at the Rhode Island School of Design as an art model for a period longer than six months, the job meets the requirement for past relevant work. *Id.* at 18, 108. The ALJ also notes that Plaintiff listed Rhode Island School of Design on his reported income for 2003 and 2004, fulfilling the requirement that the work be substantial gainful employment. 20 C.F.R. §§ 404.1567, 416.967; *see also* T. at 94, 97. The ALJ therefore concluded that Plaintiff's work as an art model met the requirements for past relevant work. (T. at 18, 108.)

Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." 20 C.F.R. §§ 404.1567, 416.967 (2012). "Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally." *Martone*, 70 F. Supp. 2d at 150 (citing §§ 404.1567(a), 416.967(a)). 20 C.F.R. § 404.1567(b) defines light work:

"Light work requires the ability to lift no more than twenty pounds,

with lifting or carrying up to 10-pound objects frequently. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

20 C.F.R. § 404.1567.

Here, the ALJ outlined the requirements of Plaintiff's prior position as an art model. (T. at 18.) The ALJ noted that Plaintiff testified that his work as an art model "consisted of remaining in a still position for extended durations and assuming different types of poses . . . sometimes [holding] a big ball or a vase or stand in a sink or crouch under a table." *Id.* "The burden is with the social security disability claimant to show that she lacks the functional capacity to perform in her past employment position." *Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 35 (2d Cir. 2013). Plaintiff did not assert that he was unable to do his past work as an art model due to his disability. Based on the substantial evidence of Plaintiff's testimony and the Dictionary of Occupational Titles[10], the ALJ rated Plaintiff's previous work as unskilled work done at a sedentary or light level of exertion. (T. at 18.) Therefore, the ALJ concluded that the work related activities of an art model do not exceed Plaintiff's RFC. *Id.*

Plaintiff contends that the ALJ improperly designated Plaintiff's past work experience as

---

[10]     The Dictionary of Occupational Titles and its companion volumes and supplements are published by the Department of Labor, and are used by an ALJ to help determine whether a plaintiff can do past relevant work, given his or her residual functional capacity. 20 C.F.R. 416.960.

substantial gainful activity.  (Dkt. No. 11 at 11-13.)   The record, however, supports the ALJ's designation of plaintiff's past work experience as an art model as substantial gainful activity. Plaintiff cites *Melville v. Apfel*, 198 F.3d 45 (2d Cir. 1999), arguing that the ALJ in the case at hand "did not engage in the analysis of how long Plaintiff performed these jobs, how well Plaintiff performed his duties or what demands were placed on him," and thus failed to properly evaluate that relevant work as substantial gainful activity.  (Dkt. No. 11 at 11-12.)  Plaintiff's reliance on *Melville* is misguided.  Although the Second Circuit in *Melville* did articulate "proper assessment" for substantial gainful activity, it did not eliminate the use of earnings based on relevant work as a measure for substantial gainful activity.  *Melville*, 198 F.3d at 53.

Furthermore, Plaintiff's argument that the ALJ did not engage in an analysis of how long Plaintiff performed these jobs, how well Plaintiff performed his duties or what demands were placed on him is incorrect.  The ALJ questioned Plaintiff about this relevant work experience, including how long he worked at each place, why he left, and if he found the work challenging. (T. at 29-31.)  Plaintiff confirmed he worked as an art model for the Rhode Island School of Design for two years.  *Id.* at 29.  He claimed he left his job as an art model because he "was having difficulties getting along with everybody pretty much."  *Id.*  When asked by the ALJ is there was "anything else going on that made it difficult" for him to hold the position, he stated that it was "hard work.  It's very hard work because of the staying still for so long, but that's pretty much it."  *Id.* at 30.  When the ALJ inquired further, Plaintiff said his nervousness and anxiety made it difficult for him to focus on staying still, but Plaintiff did not assert that those symptoms were why he left the position, only why the position was hard work.  *Id.*

Ultimately, Plaintiff bears the burden at the first four steps and must sufficiently

22

demonstrate that his impairments meet the definition of a disability.  *See Kohler v. Astrue*, 546

F.3d 260, 265 (2d Cir. 2008) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  Evaluating

Plaintiff's answers to the questions involving his relevant work, the income he received from that

work, and the doctors' evaluations of his abilities, the ALJ correctly concluded that Plaintiff's

work as an art model was a substantial gainful activity and that Plaintiff is capable of performing

that past relevant work.  The ALJ's responsibility is to follow the five-step sequential evaluation

process to determine disability.  20 C.F.R. § 416.920 (2012).  "If at any step a finding of

disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart*,

540 U.S. at 24.   At the fourth step, the ALJ "assesses whether the claimant can do his previous

work; unless he shows that he cannot, he is determined not to be disabled."  *Id*.  Plaintiff did not

show that he could not do his previous work as an art model, and the ALJ determined Plaintiff's

RFC fit the job duties of an art model.  Therefore, the ALJ ended the inquiry at the fourth step of

the process, correctly finding no disability.

> **D.     The ALJ Was Under No Obligation to Further Develop the Record in Regard to Physical Impairments and Limitations.**

Plaintiff argues that the ALJ erred by not developing the record in regard to physical

impairments and limitations.  (Dkt. No. 11 at 13.)  Defendant argues that the ALJ did not err

because Plaintiff did not allege disability on the basis of physical impairment.  (Dkt. No. 12 at

16-17.)  For the reasons that follow, I find that the ALJ did not err by failing to develop the

record in regard to physical impairments and limitations because the ALJ was under no

obligation to do so.

The ALJ has a duty to affirmatively develop the administrative record in light of the non-

adversarial nature of a benefits proceeding, regardless of whether the claimant is represented by counsel. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations omitted). This includes a duty to contact treating and other medical sources to clear gaps in the record. *Rosa*, 168 F.3d at 79. The Secretary's regulations "state that '[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . [and] will make *every reasonable effort* help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d) (2012) (emphasis added); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). "However, the *Perez* decision also demonstrates the flip-side of this same proposition. Specifically, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 at 72 n.5 (citing *Perez*, 77 F.3d at 48).

Plaintiff argues that the ALJ did not question Plaintiff about his mild degenerative condition of the lower cervical spine, claiming that a doctor's MRI report from September 15, 2008, was contained in Plaintiff's medical records and indicated a condition. (Dkt. No. 11 at 13; T. at 207.) It must be noted that the report contained within Plaintiff's medical records dated September 15, 2008, is in fact, a report from an X-ray, not an MRI. Regardless, Defendant correctly argues that Plaintiff did not bring up his spinal condition when the ALJ inquired whether they had discussed everything that limited Plaintiff from working. (Dkt. No. 12 at 16; T. at 35-37.)

The Second Circuit has acknowledged, "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 72 n.5 (citing *Perez*, 77 F.3d at 47). Here, the ALJ already possessed a complete medical history including the alleged injury. As such, the ALJ was under no general obligation to seek additional information at the hearing. Additionally, the report referenced was dated September 15, 2008, which is beyond the twelve month requirement for developing the record. *See Perez*, 77 F.3d at 48.

Any obligation of the ALJ to develop the record must be weighed against the fact that the claimant bears the burden at the first four steps and must sufficiently demonstrate that his impairments meet the definition of a disability. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez*, 77 F.3d at 46). The ALJ noted that Plaintiff affirmed his mental disabilities on three separate occasions:

> [i]n the disability report that the claimant completed as part of his application for disability benefits, the claimant stated that bipolar disorder, post-traumatic stress disorder, and alcoholism limit his ability to work. The claimant completed another disability report as part of his appeal and notes that he experiences 'episodes of manic depression' as well as 'memory loss and paranoia'. At the May 12, 2011 hearing, the claimant testified that only mental impairments limit his ability to work.

(T. at 15, 26-37) (internal citations omitted). The ALJ gave Plaintiff the opportunity to enumerate any further limitations during the hearing and Plaintiff affirmatively denied any further limitations. *Id.* at 35-37. In other words, Plaintiff never raised his alleged spinal condition as contributing to his inability to work. In several other circuits this would constitute a waiver of the additional claim. *See Generally United States v. Zannino*, 895 F.2d 1, 18 (1st Cir.

1990); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994); *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1212 (7th Cir. 1993); *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992); *Leer v. Murphy*, 844 F.2d 628, 635 (9th Cir. 1988) (where a party fails to frame and develop an issue, the argument is waived). Furthermore, Plaintiff's alleged spinal condition is not supported by any other documentation in the medical record. In fact, Dr. Long's evaluation that Plaintiff's "gait, posture, and motor behavior were normal" directly contradicts such claim. (T. at 16, 270.)

Plaintiff claims that the ALJ did not consider his spinal condition in the final decision of no disability. However, the Second Circuit has addressed such concerns: "An ALJ does not have to state on the record every reason justifying a decision. Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. SSA,* 683 F.3d 443, 448 (2d Cir. 2012) (internal citations omitted).

## VI.     CONCLUSION

In reviewing the ALJ's decision, I find that her determinations of the treating physician's opinion, Plaintiff's RFC, and non-disability based on Plaintiff's previous work as an art model were all conducted under the correct legal standard and supported by substantial evidence. Moreover, the ALJ was under no obligation to further develop the record in regard to physical impairments and limitations.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner of Social Security be **AFFIRMED**, and the Complaint (Dkt. No. 1) be **DISMISSED.**

26

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 5, 2014
           Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge